UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ESTATE OF WALTER JAJUGA,            )
ANTHONY SCIBELLI, EXECUTOR,         )
KRISTEN A. JAJUGA-MONTEITH,         )
VINCENT M. JAJUGA, AND              )
ANTHONY C. JAJUGA                   )
          Plaintiffs                )
                                    )
          v.                        ) C.A. No. 10-cv-30016-MAP
                                    )
THE PRUDENTIAL INSURANCE            )
COMPANY OF AMERICA                  )
          Defendant                 )

MEMORANDUM AND ORDER REGARDING
CROSS MOTIONS FOR SUMMARY JUDGMENT,
AND PLAINTIFFS' MOTION FOR LEAVE TO FILE
AMENDED OPPOSITION
(Dkt. Nos. 26, 28, & 32)

March 1, 2011

PONSOR, D.J.

I. INTRODUCTION

Plaintiffs are the Estate of Walter Jajuga; Anthony Scibelli, the Executor of the Estate; and Mr. Jajuga's children, the three beneficiaries of the policy at issue: Kristin Ann Jajuga-Monteith, Anthony Charles Jajuga, and Vincent Michael Jajuga. Together, they seek to recover benefits from the decedent's life insurance policy. Although Plaintiffs filed a three-count complaint, at the

hearing on these motions they indicated that they were not seeking relief under either of their first two counts. Accordingly, the only count remaining is Count III, in which Plaintiffs seek "To Recover Benefits Under the Plan and to Enforce Rights" pursuant to 29 U.S.C. § 1132, the Employee Retirement Income Security Program ("ERISA"). (Dkt. No. 1.)

Before the court are the parties' cross motions for summary judgment. (Dkt. Nos. 26 & 28.) For the reasons that follow, the court will deny Plaintiffs' motion and allow Defendant's motion.

## II. FACTS

Decedent Walter Jajuga worked in various managerial capacities for Mercedes-Benz USA from 1983 through May 5, 1997, primarily as a Business Management Manager. (A.R. 128.) The circumstances surrounding the end of Mr. Jajuga's employment are unclear, but it is undisputed that he went on a three-week drinking binge from May 5 through May 25, 1997, when he checked himself into a rehabilitation facility for detoxification. (A.R. 805.) Mr. Jajuga never returned to work. He was fifty-two years old.

Eleven years later, Mr. Jajuga died. From the date of the end of his employment through his death on December 31,

2008, he received long-term disability benefits and a disability pension from Defendant as well as Social Security disability benefits ("SSDI"). Defendant also approved his application for a waiver of premiums under his individual life insurance policy ("Individual Policy"). However, Defendant denied application for waiver of premiums under his group life insurance policy ("Group Policy") on the grounds that he was not totally disabled as defined by the Group Policy.

For unknown reasons, Mr. Jajuga did not learn of this denial until 2005, at which time he appealed it. Defendant rejected the appeal on September 5, 2006, based on its determination that Mr. Jajuga's condition did not prevent him from performing "any work," as required by the Group Policy. (A.R. 1188.) On February 28, 2007, Mr. Jajuga appealed for the second time, arguing that the fact that he was receiving SSDI benefits and that the premium on his Individual Policy was waived were evidence of his total disability. Defendant turned down this appeal as well on October 28, 2008. (A.R. 1092.) On April 8, 2009, roughly three months after Mr. Jajuga's death, Plaintiffs filed a third appeal, which Defendant denied on August 24, 2009. (A.R. 1103.) This litigation ensued.

### III. DISCUSSION

Although the record contains ample evidence of Mr. Jajuga's disability in the years just prior to his death, particularly from 2005 on, the parties agreed at the hearing that the only pertinent question before the court is whether Mr. Jajuga was totally disabled, as defined by the Group Policy, on May 5, 1997.

The Group Policy provided that:

You are "Totally Disabled" when:
(1) You are not working at any job for wage or profit; and
(2) Due to Sickness, Injury or both, you are not able to perform for wage or profit, the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience.

(A.R. 1188.) Neither party argues that this definition is ambiguous. The disagreement concerns whether Mr. Jajuga's medical condition satisfied the definition, specifically that he was not able to perform "any job."

A. <u>Legal Standard</u>.

"[I]n an ERISA case where review is based only on the administrative record before the plan administrator and . . . an ultimate conclusion as to disability can be drawn from the facts, summary judgment is simply a vehicle for deciding the issue." <u>Orndorf v. Paul Revere Life Ins. Co.</u>, 404 F.3d 510, 517 (1st Cir. 2005). Accordingly, "the non-moving party is not entitled to the usual inferences in its favor." <u>Id.</u> Instead, as always in an ERISA case, "it is

the plaintiff who bears the burden of proving he is disabled." Id. at 519. That said, the court reviews the record de novo to determine "whether, upon a full review of the administrative record, the decision of the administrator was correct." Id. at 518 (quotations omitted).

B. <u>Other Definitions of Disability</u>.

As an initial matter, Plaintiffs argue that because Mr. Jajuga was found to be totally disabled under his Individual Policy and by the Social Security Administration, so he must also be deemed totally disabled for the purposes of his Group Policy. This argument fails for the simple reason that all of the definitions are different.

Defendant's Individual Policy defines "Total Disability" as an inability to "do <u>any gainful work</u>." (A.R. 106 (emphasis added).) Social Security disability benefits are available when a claimant is unable "to engage in <u>any substantial gainful activity</u>." 42 U.S.C. § 423 (d)(1)(A) (emphasis added). The Group Policy, on the other hand, specifies that the insured be unable to do "any work." (A.R. 1188.) Accordingly, the Group Policy is broader, and it is conceivable that an insured's medical condition could satisfy the other two definitions without satisfying the Group Policy's definition.

C. <u>Medical Evidence</u>.

In contrast to the extensive documentation of Mr. Jajuga's disabilities from 2002 until the date of his death, the record is nearly devoid of medical evidence pertaining to his mental and physical condition in 1997.

The earliest medical records are from The Valley Hospital, where Mr. Jajuga was admitted for detoxification in May 1997. The emergency department report noted that he had been sober for approximately five months after spending time in detox at a different hospital, but had relapsed due to "chronic back pain" and significant family turmoil that had recently resulted in a restraining order served against him prohibiting contact with his wife and adult children. (A.R. 808-10.) He was also noted as taking prescription medication for back pain. (A.R. 828.) Upon discharge one month later, he was diagnosed with depression not otherwise specified, alcohol dependence, personality disorder not otherwise specified, and chronic pain syndrome. (A.R. 806.)

In addition to the Valley Hospital records, Defendant's denial of Mr. Jajuga's first appeal references an MRI that was performed on May 13, 1997, which revealed stenosis, degenerative disc changes, and disc herniation. (A.R. 789.) This is the only documentation of this MRI in the record.[1]

---

[1] Plaintiffs filed a supplemental memorandum stating that they had attempted to obtain a copy of this MRI as well as other medical evidence from Defendant but that Defendant had

On Mr. Jajuga's March 1998 application for waiver of premiums, his then-primary physician, Dr. Patricia Klein, listed the reasons he stopped working as "numbness in both legs [and] severe pain low back and legs" due to "Acute Lumbar Derangement" and beginning on May 5, 1997. (A.R. 172.) Dr. Klein indicated that the duration of the condition was "indefinite." (Id.)

In their 2009 appeal, Plaintiffs described Dr. Klein's assessment of Mr. Jajuga in 1997 as "totally disabled from his occupation and any other work due to the diagnoses of cauda equina syndrome, cervical disc disease with myelopathy and spinal stenosis of the lumbar region." (A.R. 89.) They further stated that Dr. Klein expected that he would "never" recover. (Id.) None of Dr. Klein's medical reports are in the record.

The next piece of medical evidence is from November 11, 1998, when Mr. Jajuga was seen by Dr. Jose Abrena, as a new

---

failed to produce it. To the extent that Plaintiffs are raising concerns about discovery, the court declines to address those concerns here. To the extent that the court's opinion is swayed by the lack of evidence in the record, suffice it to say that the court is reviewing the entire administrative record provided to it de novo. The only question before the court is whether, on this evidence, Plaintiffs have met their burden of proving "that these conditions rendered [Mr. Jajuga] unable to perform any job for which he [was] qualified." Richards v. Hewlett-Packard Corp., 592 F.3d 232, 242 (1st Cir. 2010).

patient "here for pain management (ex-football player)." (A.R. 992.) On April 21, 2002, after a three and one-half year gap, Mr. Jajuga then saw Dr. Claude Borowsky of the Mercy Medical Center, who reported that he weighed 310 pounds, smoked two packs of cigarettes a day, drank two pots of coffee, drank alcohol occasionally, lived with his parents, and "denies severe depression." (A.R. 380.) Dr. Borowsky diagnosed Mr. Jajuga at that time with chronic right neck pain due to cervical disc herniation and chronic bilateral lower extremity pain due to chronic lumbar radiculitis. An October 3, 2002, MRI revealed degeneration of the lower lumbar spine. (A.R. 361.) Mr. Jajuga's medical condition then remained essentially unchanged until 2005 when it took a turn for the worse. (See A.R. 471-647.) His cause of death is not in the record but, as noted, he died on December 31, 2008.

D. Ability to Work in 1997.

Without dispute, Mr. Jajuga had some back pain, likely significant back pain, in May 1997. What is lacking in the record is why, on May 5, Mr. Jajuga suddenly became unable to perform any job. Plaintiffs simply have provided no evidence on which the court can find that in 1997 his back pain was any more debilitating than it had been previously. For reasons too obvious to belabor, the court cannot rely on

Plaintiffs' unsupported description of Mr. Jajuga's physician's diagnoses from twelve years prior, particularly where, as here, there is no other evidence to support the alleged severity of these diagnoses. In fact, the only other evidence demonstrates that Mr. Jajuga was <u>not</u> totally disabled in 1997. While he was at The Valley Hospital in May 1997, Mr. Jajuga's social worker wrote in his progress report:

> Has not been to work in approx. 3 ½ weeks due to back pain and is in process of obtaining disability papers so he can receive short-term disability from employer. He is unsure about his future employment at Mercedes.

(A.R. 829.) This statement, while certainly evidence that Mr. Jajuga was in pain, does not suggest that he considered himself at that point to be totally disabled and unable to work in any capacity at all. Equally significant is Mr. Jajuga's discharge plan, which included the following instruction: "He will continue with medical follow-up with Dr. Scham and <u>return to work as soon as possible</u>. Diet will be regular. Activities will be normal." (A.R. 807 (emphasis added).)

As a final note, the court also observes that alcoholism, from which Mr. Jajuga undisputedly suffered, can be a disability giving rise to an inability to perform any job. See <u>Arroyo v. Sec'y of Health & Human Servs.</u>, 932 F.2d

82, 87 (1st Cir. 1991).  However, Plaintiffs would have to show that Mr. Jajuga had "so far lost the capacity for self control that he ha[d] been 'rendered impotent to seek and use means of rehabilitation.'"  Id. (quoting Adams v. Weinberger, 548 F.2d 239, 245 (8th Cir. 1977).  Here, where it appears that Mr. Jajuga had a successful career as an executive at Mercedes-Benz while he was an active alcoholic and where there is no evidence that, after his thirty-day stay at Valley Hospital, he continued to abuse alcohol in the same manner, Plaintiffs cannot meet that burden.

Having thus determined that Plaintiffs have not shown that Mr. Jajuga was unable to perform any job on May 5, 1997, the court will allow Defendant's motion for summary judgment.  (Dkt. No. 28.)

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment (Dkt. No. 26) is hereby DENIED, and Defendants' motion for summary judgment (Dkt. No. 28) is hereby ALLOWED.  Plaintiffs' motion for leave to file amended opposition (Dkt. No. 32) is hereby ALLOWED.  The court considered Plaintiff's amended opposition and Defendant's opposition to it in its opinion.  The case may now be closed.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge